LEXSEE 1962 U.S. DIST. LEXIS 5773

**Joseph Carroll et al., Plaintiffs v. Associated Musicians of Greater New York et al., Defendants.   Same v. American Federation of Musicians of United States and Canada et al., Defendants.**

**Civil No. 60-2939.Civil No. 60-4926.**

**United States District Court for the Southern District of New York.**

*1962 U.S. Dist. LEXIS 5773; 46 Lab. Cas. (CCH) P17,861*

**October 4, 1962.**

**OPINION BY:** [*1] LEVET

**OPINION**

LEVET, D.J.: Plaintiffs Carroll and Peterson have moved for a preliminary injunction enjoining defendants from visiting upon plaintiffs economic or other reprisals or retaliations or union penalties upon the basis of any union charges, where such charges are predicated upon violation by plaintiffs of union regulations, policies or practies whose validity and legality are challenged as unlawful in the complaints herein.  Plaintiffs also seek to enjoin defendants from visiting upon plaintiffs as employers and orchestra leaders any economic reprisals, including union penalties, intended to damage plaintiffs' business, profession or engagements because of failure to comply with union regulations, by-laws, practices or policies whose legal validity is challenged in the complaints herein, and from interfering with the rights of plaintiffs or any of them to work as musicians or as orchestra leaders or to work with employee musicians. Additionally, plaintiffs seek to enjoin defendants from threatening employees of plaintiffs with union discipline charges, penalties or reprisals if such employee musicians themselves freely and voluntarily decide to work for or with plaintiffs [*2] or in their orchestras.

The Present Actions

Civil Action No. 60 Civil 2939 was instituted to enjoin (a) a combination or arrangement between defendants as labor unions and officers of labor unions, on the one hand, and certain employer-orchestra leaders, on the other, to fix prices; (b) other violations of federal anti-trust laws; and (c) numerous predatory acts on the part of defendants by means of which defendants maintain the monopoly complained of in the complaint, to the irreparable damage of the plaintiffs as orchestra leaders-employers who employ sidemen belonging to defendant unions.

Civil Action No. 60 Civil 4926 was also instituted to enjoin (a) violation of federal anti-trust laws by combination or arrangement between defendants and certain employer-orchestra leaders for the purpose of exacting a general scale increase for specialclass club dates and (b) certain predatory acts by which defendants' said monopoly is maintained.

Defendants oppose this motion on four grounds:

(1) Defendants allege that this motion should be denied because the moving papers for the preliminary injunction recited that "no previous application for the relief herein sought has been [*3] made to you or any other court." (A statement indicating the presence or absence of previous applications is required by General Rule 11(b) of this court.) Defendants allege that there were three substantially similar applications previously made.  Therefore, the defendants contend that this failure to disclose the previous applications constitutes grounds for the denial of this motion.

In this context, defendants also allege that these similar applications constitute res judicata as to Messrs. Carroll and Peterson.

(2) Defendants allege that the drastic relief of a preliminary injunction should be denied because the facts do not clearly demand this relief.  That is to say, the relief of a preliminary injunction should not be granted where there are substantial questions of law and fact without a clear and convincing showing of irreparable damage.

(3) Defendants also allege that this court is without jurisdiction to grant a preliminary injunction due to the Norris-LaGuardia Act (*29 USC §§ 104, 105, 113*), which states that the district courts lack jurisdiction to issue an

injunction arising out of certain specified "labor disputes."

(4) Defendants argue that this injunction [*4] should not lie because of the By-Laws of Local 802, Art. IV, prohibiting any member from working with a non-member, is a legitimate and legal provision. Therefore, in refusing to allow its members to work with the plaintiffs, defendants and their membership were exercising a right that should not be enjoined.

The present action is part of an extensive controversy between the defendant unions and certain orchestra leaders. It has precipitated three actions in this court in addition to the present two (viz., 60 Civil 1169, 60 Civil 4025, and 62 Civil 2552). The five actions involve two basic charges against the defendant unions: First, that the defendant unions have violated Section 302 of the Labor-Management Relations Act, as amended, *29 USC § 186*, and, second, that the defendant unions have conspired together with other orchestra leaders to violate the federal anti-trust laws.

Two of the actions (60 Civil 1169 and 60 Civil 4025) were brought by Joseph Carroll and Charles Peterson on their own behalf and for an alleged class for violation of Section 302 (hereinafter the "Carroll actions"). These actions were tried before me on March 5 to 9, 1962. The remaining anti-trust [*5] actions, the present actions, are scheduled for trial before me on October 29, 1962.

The third action, Cutler et al. v. American Federation of Musicians and Local 802 (hereinafter "Cutler action"), like the first Carroll actions (60 Civil 1169, 60 Civil 4025), deals with the legality of the local tax and traveling surcharge which are required to be paid to the unions under their By-Laws. In an Opinion, Findings of Fact and Conclusions of Law dated June 25, 1952, *206 F. Supp. 462*, I dismissed the complaints in the first Carroll actions (60 Civil 1169, 60 Civil 4025) on the ground that Carroll and Peterson, being no longer members of the union, did not have standing to secure the relief sought.

The parties to this motion have agreed that the record before me shall consist, in addition to the papers expressly filed for this motion, of the various papers and affidavits of the Cutler action, 62 Civil 2552. Additionally, the parties have agreed that I might also consider the record of the aforesaid Carroll actions which I have already decided.

I have also held hearings and accepted such relevant testimony and exhibits as the parties adduced, heard extensive oral arguments and [*6] received numerous memoranda of law.

From this entire record, I make the following Findings of Fact and Conclusions of Law, pursuant to *Rule 52(a) of the Federal Rules of Civil Procedure*, 28 USC:

Findings of Fact

1. The Parties

(a) Plaintiffs Joseph Carroll and Charles Peterson at all times relevant herein were and now are orchestra leaders in the so-called "single engagement field."

(b) Defendant American Federation of Musicians (hereinafter "Federation") is a labor union or labor organization within the meaning of the Labor-Management Reporting and Disclosure Act of 1959. It is affiliated with the AFL-CIO and its principal office and place of business is at 425 Park Avenue, New York, N. Y. It is an international union comprising 683 local unions, including defendant Local 802, and is located throughout the United States and Canada.

(c) Defendant Local 802 is a labor organization within the meaning of the Labor-Management Reporting and Disclosure Act of 1959 and is affiliated with the defendant Federation. Its principal office and place of business is located at 261 West 52nd Street, New York 19, N. Y. Local 802 represents, among others, members who are leaders and [*7] sidemen [1] in the single engagement field. Under Federation By-Laws, the territorial jurisdiction of Local 802 consists of the five boroughs of New York City and the Counties of Nassau and Suffolk.

> 1    The term "sidemen" refers to musicians who perform in a band or orchestra but does not include the leader or conductor of said band or orchestra.

(d) Defendants are representatives of employees (sometimes called musicians or sidemen) employed by the individual plaintiffs or by other orchestra leaders.

2. As to Plaintiff Carroll

Carroll was expelled from defendant unions on January 2, 1962, apparently because he did not make certain union payments which he claimed to be illegal. Since that time until September 7, 1962, the defendants did not interfere with his practice of conducting engagements as an orchestra leader and as a participating player. However, when he appeared for an engagement at the Jade Room of the Waldorf-Astoria on September 7, 1962 and sought to direct five sidemen from defendant unions engaged by him, a business agent of Local 802 appeared and, acting under instructions of the officials of Local 802, instructed such sidemen that they might play for [*8] Carroll but not with him while he either plays an instrument in his orchestra or leads it. Then, when so

1962 U.S. Dist. LEXIS 5773, *; 46 Lab. Cas. (CCH) P17,861

forced, Carroll secured a new drummer, appointed a sub-leader, and left.

Carroll's expulsion from the defendant union Local 802 resulted from a variety of charges: (1) Violation of defendants' price list; (2) Failing to file contracts or reports of engagements upon which the 10% "traveling surcharge" was computed (see opinion by this court in 60 Civil 1169 and 60 Civil 4025); (3) Causing other members to violate the Constitution, By-Laws and price list; (4) "Unfair dealings." He was expelled by reason of a charge originated by Local 38, Larchmont, New York, because he did not pay the 10% traveling surcharge.

After the dissolution of the Preliminary Injunction Order of December 1, 1961 in the present action in July 1962, Carroll sought reinstatement in Local 802, which was rejected by defendant without reason stated.

Prior to September 7, 1962, Carroll was subject to intra-union penalties. As a result of these penalties, Carroll paid a total of $525 in fines in 1961. However, Carroll was never subject to external or extra-union reprisals or penalties until the above-mentioned [*9] incident.

3. As to Plaintiff Peterson

Peterson is an orchestra leader who conducts but does not play an instrument.

Peterson points out that Max L. Arons, Secretary of Local 802, in an affidavit dated August 16, 1962, interposed in opposition to a motion for preliminary injunction in the Cutler action, 60 Civil 2552, states:

"Peterson was expelled from defendant unions because of his failure to pay minimum union scale to the sidemen in orchestras in which he was leader; his failure to file Form B Contracts; his contracting of engagements for less than the prescribed wage scale; leading an orchestra with less than the number of sidemen required by defendants' rules; and for failure to appear before the Executive Board after having been summoned on numerous occasions." (Arons affidavit, August 16, 1962, p. 22)

The expulsion of Peterson was on March 21, 1961, after the institution of these actions. "Allegro," an official publication of Local 802, since then has contained the following notice:

"Official notices of Local 802"; EXPULSION OF CHARLES PETERSON

"The Trial Board of Local 802 expelled Charles Peterson as a member of the Local on March 28, 1961.

"Please be [*10] advised that any member working with him will be subject to charges (see Executive Board minutes March 28, 1961)"

At various times since the institution of this action, agents and officers of Local 802 have interfered to prevent musicians working for Peterson. (See Peterson affidavit, paragraphs 28-42) The business and profession of Peterson is imperiled if the defendant unions continue these practices. Irreparable damage will result to Peterson and to Carroll.

4. It appears to this court, as already indicated, that defendant unions have no legal right to collect the three so-called taxes from an employer-orchestra leader such as Peterson. (See Opinion in 60 Civil 1169 and 60 Civil 4025, dated June 25, 1962, *206 F. Supp. 462*)

5. It also appeared that both Peterson and Carroll were employers of their sidemen (ibidem, Findings Nos. 16-21).

Defenses

1. I find the first defense without merit. The fact that there have been alleged similar applications is addressed to the sound discretion of the court. Upon review of the alleged similar applications, I find that they are dissimilar in that they all request relief for those similarly situated with Messrs. Carroll and Peterson [*11] and the relief requested is based upon essentially different circumstances. This application is for the sole protection of Messrs. Carroll and Peterson, enjoining extra-union reprisals based upon the fact that Messrs. Carroll and Peterson are no longer union members by reason of their failure to pay the illegal exactions.

The first application was made in July 1960. This motion was denied by Judge Bryan on October 19, 1960. The relief sought in this application was two-fold. First, enjoining defendants from putting into effect the new "Price List Resolutions" and "New Minimums" established by the unions in June 1960. Second, enjoining reprisals by defendants on plaintiffs for their refusal to abide by these new regulations.

The second application was made in March 1961. This motion was denied by Judge Palmieri on April 17, 1961. This application sought to enjoin reprisals by defendants against the plaintiffs and those similarly situated due to plaintiffs' participation in the actions or because of their failure to comply with union regulations whose legal validity was being attacked in the complaints.

The third application was made after Judge Palmieri's denial of a [*12] preliminary injunction in April 1961. This application was made to the Court of Appeals pending the appeal from Judge Palmieri's order denying the injunctive relief. This application was denied in August 1961. This application sought an injunction enjoining the defendants from visiting upon plaintiffs and all those similarly situated reprisals based upon

1962 U.S. Dist. LEXIS 5773, *; 46 Lab. Cas. (CCH) P17,861

union charges whose validity were being contested in the Carroll actions.

Finally, the Court of Appeals reversed in part Judge Palmieri's order denying the preliminary injunction. The Court of Appeals sustained the denial as applied to the anti-trust actions, the present actions, but reversed the denial relating to the Section 302 actions, the cases I tried previously (60 Civil 4025, 60 Civil 1169, *206 F. Supp. 462*) with instructions to issue a preliminary injunction. Judge Palmieri did this on December 1, 1961. This injunction was limited entirely to the Section 302 actions (60 Civil 4025, 60 Civil 1169, *206 F. Supp. 462*).

The Court of Appeals in sustaining the denial as applied to the anti-trust actions held that the relief sought could not be granted because it would interfere with the long-established system for establishing [*13] wage scales and employment quotas.The present application has nothing to do with wage scales and employment quotas. This application merely seeks to enjoin union reprisals against Messrs. Carroll and Peterson.

This court on July 5, 1962 vacated the above order. Thereupon, plaintiffs made an application to the Court of Appeals to continue the injunction of December 1, 1961. This application was denied on July 17, 1962.

Defendants allege that these similar applications constitute res judicata as to Messrs. Carroll and Peterson. I find this allegation without merit because there are new and supplemental facts urged by the plaintiffs as grounds for the relief requested.

The vacation of the previous preliminary injunction order of December 1, 1961 does not preclude issuance of necessary protective measures now shown to be required at this time. No res judicata exists. Equity will intervene where irreparable damage would result.

2. As to the second defense of the defendants, I find this defense without merit because the plaintiffs have shown, and I have found, that there is present and prospective irreparable damage.

3. As to the third defense of the defendants, I [*14] find that the instant case does not fall under the prohibitions found in the Act.

The actions herein do not involve or grow out of a "labor dispute" as defined by Section 13 of the Norris-LaGuardia Act (*29 USC §§ 101-115*); and the acts of which plaintiffs complain are not immunized from injunctive relief under the Sherman Act (*15 USC §§ 1 and 2*) by the provisions of a Clayton Act (*15 USC § 17; 29 USC § 52*).

The term "labor dispute," as defined in Section 13 of the Norris-LaGuardia Act, is so broad that it easily embraces the instant cases if literally interpreted. However,

amplification of this statutory definition has been authoritatively restricted by many cases. See *Allen-Bradley Co. v. Union, 1945, 325 U.S. 797; Bakery Drivers Union v. Wagshal, 1948, 333 U.S. 437.*

The cases make it clear that not every dispute involving an employer, employee and a labor union is a labor dispute within the meaning of the statute. See, e.g., *Columbia River Packers Association, Inc. v. Hinton, 1942, 315 U.S. 143; United Electric Coal Companies v. Rice, 7 Cir. 1937, 80 F. 2d 1; Louisville and Nashville Railroad Co. v. Local Union 432, International Woodworkers of America, D.C.S.D. Ala.* [*15] *1952, 104 F. Supp. 748.*

Here the gravamen of the dispute is a charge of antitrust violation lodged against the union by purported employers. This is not a situation as in *Milk Wagon Drivers' Union, Local No. 753 v. Lake Valley Farm Products, Inc., 1940, 311 U.S. 91*, where the anti-trust laws were used as a vehicle to circumvent the Norris-LaGuardia Act.

Therefore, it seems clear that the Norris-LaGuardia Act does not prohibit an injunction in this case.

4. As to the fourth defense of the defendants, I find this defense without merit. While it is true that a union member can refuse to work with a non-union member, it is equally true that equity will enjoin irreparable damage - that is to say, the plaintiffs were expelled from union membership for their failure to abide by certain regulations, the legality of which are being questioned in this case.Now the defendants are irreparably damaging plaintiffs in their profession by refusing to let their members work with the plaintiffs. Equity will not let plaintiffs suffer this wrong.

Conclusions of Law

1. This court has jurisdiction of the parties and of the subject matter of this action.

2.Irreparable harm would result [*16] to the plaintiffs from a denial of the preliminary injunction in that the extra-union reprisals and penalties would seriously and irreparably interfere with the conduct of their profession as orchestra leaders.

3. Therefore, the plaintiffs are entitled to an injunction to provide as follows:

(1) That pending the trial and adjudication of the issues raised by the complaints in these actions, defendants, their officers, agents, servants, employees and attorneys and those persons in active concert with them who receive actual notice of the injunction order be and they are enjoined from

1962 U.S. Dist. LEXIS 5773, *; 46 Lab. Cas. (CCH) P17,861

a. threatening in any way, whether directly or indirectly, any musicians (sidemen), customers or prospective customers of said plaintiffs because of the failure of the plaintiffs to comply with union regulations, by-laws, practices or policies whose legal validity is challenged in the complaints herein, and from interfering with the rights of plaintiffs to work as musicians or as orchestra leaders or to work with employee musicians;

b. Threatening employees of plaintiffs with union discipline charges, penalties or reprisals if such employee musicians themselves freely and voluntarily decide [*17] to work for or with plaintiffs or in their orchestras.

The provisions of the said preliminary injunction order as to security will be determined by this court after conference with counsel and upon submission of an order in accordance herewith and with any further direction of the court, on October 16, 1962, 9:30 A.M., room 2103.

The foregoing constitute my Findings of Fact and Conclusions of Law pursuant to *Rule 52(a) of the Federal Rules of Civil Procedure.*

Settle order on notice.