LEXSEE 1984 U.S. DIST. LEXIS 16139

HARRIS GLENN MILSTEAD, Plaintiff, against O RECORDS & VISUALS, LTD.
and ROBERT ORLANDO, Defendants.

No. 84 Civ. 3657 (RLC)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

1984 U.S. Dist. LEXIS 16139

June 5, 1984

**COUNSEL:** [*1] ZISSU, STEIN & MOSHER, 270 Madison Avenue, New York, New York 10016, JAMES W. MOSHER, for Plaintiff

SIEGLER & SCHWARTZ, 20 South Broadway, Yonkers, New York 10701, WALTER SCHWARTZ, STEPHEN SCHWARTZ, for Defendants

**OPINION BY:** CARTER

**OPINION**

OPINION

CARTER, District Judge

Plaintiff Harris Glenn Milstead, known professionally as "Divine", signed a recording contract with defendant O Records & Visuals, Ltd. ("O Records") on July 12, 1982. The contract was exclusive, binding plaintiff not to make records for any other entity. Defendant, for its part, was required to account for and pay any royalties owing to plaintiff on a semi-annual basis, within two months after June 30 and December 31 of each year.The contract was for one year, renewable at defendant's option for four successive one year periods.

Defendant rendered an accounting for the period ending December 31, 1982, but failed to do so for the following six month period. On September 26, 1983, plaintiff sent defendant the notice of default required by the contract but no accounting was made within the 15 day cure period provided. On November 4, plaintiff sent defendant a letter stating that the failure to provide the required [*2] accounting was a material breach of the contract and that plaintiff was terminating the contract as a result. [1] In or about April, 1984, plaintiff began negotiating with a third party, Barry Evangeli of Proto Records, toward the goal of signing a record contract. On April 3, counsel for defendnat Robert Orlando, president of O Records, sent a telex to Evengeli asserting that O Records still had an exclusive contract with plaintiff and that unless Evangeli immediately provided written confirmation of his intention not to deal further with plaintiff, he would be "held liable for any and all damages. . . ." Exh. H to Jay Aff. On April 5, a second telex was sent to the same effect. In addition, on April 4, Orlando sent a telex to plaintiff's counsel which, in essence, asserted that counsel would be violating his ethical duties if he assisted plaintiff in his negotiations with Evangeli.

1   No accounting was made for the six months ending December 31, 1983, either.

Plaintiff filed this suit seeking, inter alia, compensatory and punitive damages, a declaration that he is no longer obligated to O Records under the July 12, 1982 contract, and an injunction barring defendants from [*3] interfering with plaintiff's negotiations or contractual relations with others in the recording industry. The matter is now before the court on plaintiff's motion for preliminary injunctive relief.

A preliminary injunction may be granted only upon a showing of possible irreparable injury to the movant and either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in plaintiff's favor. *Arrow United Industries v. Hugh Richards, Inc., 678 F.2d 410 (2d Cir. 1982); Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70 (2d Cir. 1979)*. Having considered the affidavits submitted by the parties as well as the testimony presented at an evidentiary hearing held May 29, 1984, the court concludes that plaintiff is likely to prevail on the merits of his claim that he is no longer contractually bound to O Records and that he is likely to suffer irreparable harm if the requested relief is not allowed. Accord-

Case 1:07-cv-07837-AKH    Document 10-7    Filed 10/09/2007    Page 2 of 2

Page 2
1984 U.S. Dist. LEXIS 16139, *

ingly, plaintiff's motion for a preliminary injunction is granted.

Defendants do not deny that they have threatened Evangeli with a lawsuit if he contracts [*4] with plaintiff for the latter's services as a recording artist, nor do they contest the claim that plaintiff will suffer irreparable harm if he is prevented from making records. The injury to plaintiff's career that will follow from his inability to produce new records during this litigation and the resultant decline in his public exposure clearly goes beyond any quantifiable lost earnings. Where, as here, the harm that may be inflicted during the pendency of an action cannot be calculated with the certainty that would make damages an adequate remedy, the "irreparable injury" aspect of the preliminary injunction standard is satisfied. *Ives Laboratories, Inc. v. Darby Drug Co., 601 F.2d 631, 644 (2d Cir. 1979); Standard Metals Corp. v. Tomlin, 503 F. Supp. 586, 596 (S.D.N.Y. 1980)* (Motley, C.J.).

Defendants do, however, maintain that they have not breached their exclusive contract with plaintiff, that that contract is still valid and binding, and therefore, that plaintiff cannot show a probability of success on the merits. First, defendants argue that they were not required to provide an accounting for the January 1 - June 30, 1983 period because no royalties were due plaintiff [*5] for those months. The contract states that "[s]uch royalties will be paid to Artist . . . and will be accompanied by appropriate royalty statements." Exh. C to Jay Aff. Defendants construe this language as obligating them to account for the credits and debits to plaintiff's account only if a balance is owing to plaintiff at the end of the six month period. If plaintiff is "in the red," defendants argue, they need not account for that state of affairs nor inform plaintiff of what moneys defendants received from sales of plaintiff's records. This argument is untenable. It would be unreasonable to interpret the contract as relieving O Records of any obligation to inform plaintiff of the sums advanced to him and those received as proceeds from the sale of his records merely because the former were larger than the latter. Only a proper accounting would allow plaintiff to assess whether such a negative balance did, in fact, exist. Moreover, defendants' own actions belie this interpretation. Defendants provided an accounting for the period ending December 31, 1982, although that accounting showed plaintiff to be over $38,000 in the red. Exh. D to Jay Aff.

Second, defendants, claim [*6] that plaintiff himself reaffirmed the contract by cashing the $3,500 check tendered by Orlando pursuant to the contractual procedure for O Records' exercise of its option to renew the contract. This argument is also without merit as plaintiff cashed the check in August, 1983. The alleged material breach did not occur until September 1, 1983, the date on which the accounting for the January 1 - June 30 period came due.

Finally, defendants allege that plaintiff's attorney and/or his personal manager, aware that no money was owed to plaintiff, wavied plaintiff's right to a timely accounting. A dispute exists with respect to this factual question but the documentary evidence in the record, including the September 26 and November 4, 1983 letters, casts grave doubt on defendants' contention. In addition, Bernard Jay, plaintiff's personal manager, testified that although the date by which plaintiff was to receive the accounting was extended several times, no extensions were granted subsequent to the expiration of a final November 3, 1983 deadline. No evidence presented by defendants directly contradicts this assertion.

In sum, plaintiff has demonstrated a probability of success [*7] on his claim that defendants materially breached the July 12, 1982 contract by failing to provide the accounting required thereunder, and that plaintiff is no longer obligated to O Records under that contract. Plaintiff has further shown that he will be irreparably injured if defendants are not restrained from interfering with plaintiff's negotiations and contractual relations with others in the recording industry.

Therefore, defendants, their agents, employees, and attorneys are hereby enjoined, during the pendency of this action, from asserting to third parties any claim of exclusive rights in plaintiff's services as a recording artist, or from threatening with legal action any third party who may deal or contract with plaintiff for such services, or from otherwise interfering with plaintiff's dealing with third parties with regard to such services.

IT IS SO ORDERED.