LEXSEE 2007 U.S. DIST. LEXIS 52382

PELLA WINDOWS & DOORS, division of LUX HOME, INC., Plaintiff, -- against -- FRANK BUSCARNERA and SUPER ENTERPRISES, Defendants.

07 CV 82 (SLT) (JMA)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

2007 U.S. Dist. LEXIS 52382

July 18, 2007, Decided
July 19, 2007, Filed

**COUNSEL:** [*1] For Pella Windows & Doors, division of Lux Home, Inc, Plaintiff: Jedd Mendelson, LEAD ATTORNEY, Fox Rothschild LLP, New York, NY.

For Frank Buscarnera, Super Enterprises, Defendants: John Thomas Bauer, LEAD ATTORNEY, Littler Mendelson, P.C., Melville, NY.

**JUDGES:** Sandra L. Townes, United States District Judge.

**OPINION BY:** Sandra L. Townes

**OPINION**

**MEMORANDUM and ORDER**

**TOWNES, United States District Judge:**

Before this Court is the Report and Recommendation of Magistrate Judge Joan M. Azrack, dated February 23, 2007, (the "R&R"), regarding a motion by Pella Windows & Doors, a division of Lux Home, Inc. ("Pella" or "Plaintiff"), for a preliminary injunction. Judge Azrack recommended that this Court deny Plaintiff's request for a preliminary injunction restraining defendant Frank Buscarnera ("Buscarnera") from engaging in employment with defendant Super Enterprises ("Super Enterprises") (collectively, with Buscarnera, "Defendants"). Pursuant to *Fed. R. Civ. P. 72(b)*, Plaintiff objected to certain parts of the R&R, and Defendants responded. In accordance with *28 U.S.C. § 636(b)(1)*, this Court reviews *de novo* those portions of the R&R to which Plaintiff objects.

After carefully reviewing Plaintiff's objections, this Court [*2] adopts the R&R in its entirety and denies Plaintiff's request for a preliminary injunction. For purposes of this Order, familiarity with the facts of the case is presumed. The Court refers the parties to the facts as stated in the R&R.

**DISCUSSION**

Plaintiff has objected to several parts of the R&R. Plaintiff challenges Judge Azrack's finding that Pella failed to establish the requisite imminent irreparable harm, that the balance of hardships favors Buscarnera, and that Buscarnera would be substantially burdened by an injunction. Additionally, Pella objects to the recommended finding that Pella's list prices are not a proprietary trade secret and also raises issues with some of Judge Azrack's factual findings.

*A. Failure to Establish the Requisite Imminent Irreparable Harm*

"[T]he single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985). An applicant for an injunction must establish more than a mere possibility of irreparable harm: the harm must be imminent, and [*3] the movant must show it is likely to suffer irreparable harm if equitable relief is denied. *See JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990). As the Second Circuit has noted, "likelihood sets, of course, a higher standard than 'possibility.'" *Id.* Judge Azrack found the remote possibility that Buscarnera would disclose Pella's confidential information did not present the type of significant risk of irreparable harm necessary for the drastic relief of a preliminary injunction.

Pella now challenges this finding, claiming that Judge Azrack did not "examine the record with an eye

Case 1:07-cv-07837-AKH    Document 10-8    Filed 10/09/2007    Page 2 of 3

Page 2
2007 U.S. Dist. LEXIS 52382, *

toward how people conduct themselves in the real world." (Plaintiff's Memorandum in Support of Objections ("Memo in Supp. of Objections"), at 7.) Pella spends many pages of its Memorandum discussing how "human nature" really works in the market place, but does not support its contentions with evidence from the record. (Memo in Supp. of Objections, at 7-13.) For example, Judge Azrack found that, in his new position, Buscarnera will not be selling windows directly to customers, but will be maintaining and establishing relationships with dealers by training them on product knowledge, features, [*4] and application of the windows. (Tr. 143, 444, 646-48.) Judge Azrack found that it was made clear at the hearing that it is a known policy at Super Enterprises that the Territory Managers do not get involved in pricing window products with the dealers. (Tr. 379-80.) These dealers are independent businesses that operate on their own profit margin, and are therefore responsible for setting prices for all of the windows they sell, without any input from their supplier Super Enterprises. (Tr. 379.)

Pella asserts that Super Enterprises' claim that Territory Managers and dealers never discuss the dealers' pricing is "hogwash." Its territory managers are commissioned and, therefore, incentivized to promote their dealers to "move" Marvin windows. (Memo. in Supp. of Objections, at 9.) Given these circumstances, Pella argues, it is not even remotely plausible that Buscarnera would refrain from exploiting his knowledge of Pella's pricing to assist dealers in competing for their customers' business, particularly when dealers learn that a customer is choosing between Marvin and Pella products. (*Id.*) Pella argues that, given this setting, Judge Azrack should not have accepted at face value that Super [*5] Enterprises' Territory Managers do not consult with their dealers and their customers about price.

This Court is not persuaded by Pella's speculative arguments about how business really works. There is simply no evidence in the record to support Pella's contention that Buscarnera will be using or revealing Plaintiff's prices in his employment with Super Enterprises. (Tr. 378-79, 381-82, 398-99, 405-06, 429.) Moreover, Pella had more than sufficient time to subpoena Super Enterprises' dealers in an effort to address this issue, but it failed to present even one witness to support its argument.

Finally, Plaintiff's reliance on *Reuters Ltd. v. United Press International, Inc., 903 F.2d 904, (2d Cir. 1990)*, is misplaced. In that case, Reuters attempted to terminate the delivery of foreign news pictures to United Press International ("UPI"). *Id.* at 907. Thus, the *Reuters* case involved the potential interruption of a unique product to a distributor (UPI) whose customers relied on such product. The Second Circuit found that a distributor's inability to deliver a product creates a loss of goodwill and reputation sufficient to support a finding of irreparable injury, noting that "even a speculative [*6] loss may cause immediate irreparable harm to UPI's goodwill." *Id. at 908*. In the instant case, there is no threat to Pella's goodwill or reputation because of the alleged possibility of increased competition from Marvin windows.

### B. The Balance of Hardships Favors Buscarnera

"A party seeking a preliminary injunction must establish that (1) absent injunctive relief, it will suffer irreparable harm, and (2) either (a) that it is likely to succeed on the merits or (b) that there are sufficiently serious questions going to the merits to make them fair ground for litigation, and that the balance of the hardships tips decidedly in favor of the moving party." *Otokoyama Co., Ltd. v. Wine of Japan Import, Inc., 175 F.3d 266, 270 (2d Cir. 1999)*. Judge Azrack found that the balance of hardships tipped in favor of Buscarnera, who she found would be substantially burdened if he were prohibited from taking the new position with Super Enterprises. Judge Azrack credited Buscarnera's testimony that the promotion from salesman at Pella to Territory Manager at Super Enterprises was an advancement in his career, and that he was denied this advancement at Pella.

Pella argues that its promise to protect Buscarnera [*7] economically meant that Buscarnera would experience no economic hardship if he were enjoined from working for Super Enterprises. Pella points out that after Buscarnera gave oral notice of his intention to resign, the General Manager of Pella's Retail Division, Michael Kornegay, told Buscarnera that he would guarantee him 242 appointments. Pella argues that it was entirely possible for them to guarantee these appointments, which were more than mere "leads" but were scheduled appointments with customers. (Memo in Supp. of Objections, at 3-4.)

Regardless of whether Pella could deliver on this promise to Buscarnera, the Court finds that Buscarnera had reason to be wary of any guarantees from Pella. First, Pella removed the guaranteed salary portion from Buscarnera's compensation package in the start of 2004. (Tr. 513). Second, Pella failed to convert Buscarnera's former co-worker's commission into his own when the company asked him to perform "clean up" work with the understanding that such a conversion would take place. (Tr. 547-48.) Third, the individual who made Pella's alleged "guarantee," Michael Kornegay, presented another option (of a flat 10% commission) to Buscarnera, which it [*8] turned out was not even authorized by Pella. (Tr. 543-44.) Senior Vice President & COO, Alan Wechsler, confirmed that he would not have approved the flat 10% deal even though it was offered by Kornegay and even if Buscarnera had accepted it. (Tr. 292-93.) These inci-

Case 1:07-cv-07837-AKH   Document 10-8   Filed 10/09/2007   Page 3 of 3

Page 3
2007 U.S. Dist. LEXIS 52382, *

dents, supported by record evidence, make clear that Buscarnera had every reason to doubt "guarantees" offered by Pella.

Furthermore, this Court finds the balance of hardships tips in favor of Buscarnera because he would be barred from employment in the only industry that he truly has expertise. While the non-compete agreement does not bar Buscarnera from working in the vinyl or aluminum window industry, because Buscarnera has extensive experience and knowledge in the wood window market, it would not advance his career if he were forced to work with aluminum or vinyl window companies. By all accounts, wood windows are a superior product and denote a higher caliber industry than aluminum and vinyl windows, and so working with other products would be a "step down" in his career. (Tr. 462-63.)

"[N]o restrictions should fetter an employee's right to apply to his own best advantage the skills and knowledge acquired by the overall [*9] experience of his previous employment." *Ivy Mar Co. v. C.R. Seasons, Ltd.*, 907 F. Supp. 547, 554 (E.D.N.Y. 1995) (quoting *Reed, Roberts Assocs., Inc. v. Strauman*, 40 N.Y.2d 303, 307, 386 N.Y.S.2d 677, 353 N.E.2d 590 (1976)). This Court agrees with Judge Azrack's finding that Buscarnera must be free to pursue his livelihood with another company, such as Super Enterprises, that offers him new opportunities for advancement.

### C. The PDQ System Is Not a Trade Secret in Danger of Being Disclosed by Buscarnera

Plaintiff argues that Judge Azrack erred in recommending that Plaintiff's PDQ software is not a trade secret in danger of being disclosed by Buscarnera. Pella's PDQ system is a computer software program that allows Pella employees to calculate the list prices for all of Pella's products so they can quote these prices to customers. PDQ is accessible only to Pella employees, and only with a secured password. Pella argues that these characteristics are the hallmarks of a trade secret. *See Unisource Worldwide, Inc. v. Valenti*, 196 F. Supp. 2d 269, 278 (E.D.N.Y. 2002).

There are approximately four million different list prices that can be generated from the PDQ system simply by changing [*10] product variables such as the material, style, and size of the windows or doors. For this reason, Judge Azrack observed that it would be nearly impossible for Buscarnera to memorize the various price permutations in the PDQ system. Another factor that courts must consider when determining whether information is a trade secret is the ease or difficulty with which the information could be properly acquired or duplicated by others. *Unisource Worldwide, Inc.*, 196 F. Supp. 2d at 278. This Court agrees with Judge Azrack's conclusion that Buscarnera could not possibly recall an exact price list for a Pella product in order to undercut the very same product with a competitor. Because there is no chance that Buscarnera could possibly replicate and use the information contained on the PDQ system, the Court adopts Judge Azracks' finding that the information is not a trade secret in danger of being disclosed by Buscarnera. This Court is not convinced by Pella's unsupported argument that although the information is not capable of replication, Buscarnera carries with him a "working knowledge" of the system that could be exploited. (Memo in Supp. of Objections, at 16.) Furthermore, the mere recollection [*11] of information based on casual memory is not actionable. *See Abraham Zion Corp. v. Lebow*, 593 F. Supp. 551, 564 (S.D.N.Y. 1984), aff'd 761 F.2d 93 (2d Cir. 1985); *Zurich Depository Corp. v. Gilenson*, 121 A.D.2d 443, 444, 503 N.Y.S.2d 415 (2d Dep't 1986).

In addition, the Court notes that New York has recognized three protectible interests that a restrictive covenant may be used to protect: (1) to prevent an employee's disclosure of trade secrets; (2) to prevent an employee's release of confidential information regarding the employer's customers; or (3) in those cases where the employee's services to the employer are deemed unique or special. *See Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 70 (2d Cir. 1999). The existence of a trade secret is, therefore, only part of the analysis in determining whether there is a protectible interest; Plaintiff must also show that the trade secret is in danger of being disclosed in the new position. Buscarnera took nothing with him when he left Pella, and cannot possibly have memorized the price lists generated by the PDQ system. Because Buscarnera's disclosure of any trade secrets is, therefore, incredibly remote, the PDQ system is not a protectible interest that warrants [*12] the protection of a restrictive covenant.

### CONCLUSION

The Court has considered Plaintiff's additional objections to the R&R and finds them to be without merit. Therefore, based on the reasons stated above, the Court adopts Magistrate Judge Azrack's Report and Recommendation in its entirety. Accordingly, Plaintiff's request for a preliminary injunction is DENIED.

SO ORDERED.

Dated: Brooklyn, New York

July 18, 2007

Sandra L. Townes

United States District Judge