LEXSEE 2006 MINN. APP. UNPUB. LEXIS 594

**United Products Corporation of America, Inc., Appellant, vs. Brenton R. Cederstrom, et al., Respondents.**

A05-1688

COURT OF APPEALS OF MINNESOTA

*2006 Minn. App. Unpub. LEXIS 594*

June 6, 2006, Filed

**NOTICE:** [*1] THIS OPINION WILL BE UNPUBLISHED AND MAY NOT BE CITED EXCEPT AS PROVIDED BY MINNESOTA STATUTES.

**PRIOR HISTORY:** Ramsey County District Court File No. C0-05-4956. Hon. M. Michael Monahan.

**DISPOSITION:** Affirmed.

**COUNSEL:** For Appellant: David Bradley Olsen, Matthew H. Morgan, Henson & Efron, P.A., Minneapolis, Minnesota.

For Respondents: Joseph M. Sokolowski, Lindsay J. Zamzow, Parsinen Kaplan Rosberg & Gotlieb, P.A., Minneapolis, Minnesota.

**JUDGES:** Considered and decided by Hudson, Presiding Judge; Klaphake, Judge; and Crippen, Judge.*

> * Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**OPINION BY:** HUDSON

**OPINION**

**UNPUBLISHED OPINION**

HUDSON, Judge

On appeal from a district court order denying temporary injunctive relief, appellant argues that the district court abused its discretion by (a) refusing to enjoin respondents from violating an employment agreement between appellant and respondents, and (b) refusing to enjoin respondents from violating the Uniform Trade Secrets Act and their respective common-law duties of confidentiality. Because appellant has not demonstrated a likelihood of success on the merits, and because appellant [*2] has not demonstrated a threat of irreparable harm, we affirm.

**FACTS**

Appellant United Products Corporation of America, Inc. (UPC) is a Minnesota corporation that distributes and sells roofing, windows, and siding products in Minnesota, Wisconsin, Iowa, North Dakota, and South Dakota. UPC hired respondent Brenton Cederstrom as an outside salesperson on April 11, 2001. Cederstrom's family was in the siding business, and he received additional experience working as an outside sales representative for a separate siding distributor before working for UPC. According to UPC, Cederstrom's territory included northeast Iowa, southwest Wisconsin, and the southern one-third of Minnesota. According to Cederstrom, his Minnesota territory was limited to eight Minnesota counties.

As an outside salesperson, Cederstrom had access to UPC's confidential financial information, including customer lists; customer financial information and credit histories; and UPC's pricing information, including rebates, discounts, vendor agreements, and sales strategies. Cederstrom regularly received sales and customer reports and had access to similar information outside of his territory through UPC's computer [*3] network. Cederstrom also attended UPC company-wide sales meetings during which the salespersons from each UPC branch identified the top ten customers in their territories and developed long-term sales strategies. While employed at UPC, Cederstrom had an expense account for entertaining and developing relationships with UPC customers. According to UPC, Cederstrom's knowledge of UPC's confidential financial information and customer information could be used to improve a competitor's proposals and alert a competitor to previously unknown opportunities.

Case 1:07-cv-07837-AKH    Document 10-12    Filed 10/09/2007    Page 2 of 4

Page 2
2006 Minn. App. Unpub. LEXIS 594, *

In an effort to keep the information described above confidential, UPC requires all employees with access to confidential information to sign employment agreements containing confidentiality and non-competition provisions. Cederstrom signed such an agreement on April 11, 2001, the date of his hire. The agreement prohibits an employee from being "[e]mployed by . . . or in any way providing services to or for the benefit of [UPC's] Competitors" for 18 months after leaving UPC's employment. The agreement also prohibits an employee from soliciting orders from customers who dealt with UPC during the 12-month period before the employee's [*4] resignation, and from disclosing confidential information.

Cederstrom resigned his employment with UPC on May 4, 2005, and began working for respondent Alcoa Home Exteriors, Inc. (Alcoa). Alcoa is a manufacturer of exterior building products, including vinyl and aluminum siding. Alcoa sells its products in Minnesota, Wisconsin, Iowa, North Dakota, and South Dakota through independent distributors. Alcoa employed Cederstrom as a district sales manager with responsibility for northern and west-central Wisconsin, as well as all of Minnesota, excluding the eight counties that represented Cederstrom's UPC territory. In addition to administrative duties at Alcoa, Cederstrom participates in joint sales calls with the salespeople of Alcoa's distributors. Ted Lansing Corp. (TLC) is Alcoa's exclusive siding distributor in Minnesota and is a direct competitor of UPC.

Alcoa structured Cederstrom's job responsibilities and territory to address the non-competition, non-solicitation, and confidentiality provisions of Cederstrom's agreement with UPC. Alcoa directed Cederstrom not to use or disclose UPC confidential information and to refrain from contacting any UPC customers with which Cederstrom [*5] worked within the last 12 months of his employment with UPC. Cederstrom has no authority or policy role in setting Alcoa's manufacturing price to distributors or in setting discounts and rebates made available to Alcoa distributors.

According to Cederstrom, while he was at UPC he did not have access to information about manufacturer costs or charges. Additionally, Cederstrom contends that his principal focus at UPC was his own customer base, and, consequently, he did not access broader, UPC-wide customer information. Cederstrom examined only annual UPC sales and planning information to compare it to his own territory. And to the extent that he did receive information related to UPC-wide and other UPC branch performance, Cederstrom contends that he did not keep that information and does not remember the contents. Cederstrom did not take any UPC data or information upon leaving UPC. Further, according to Alcoa's affidavits, Alcoa does not seek or use confidential information from other manufacturers or their distributors in the pursuit of Alcoa's business interests.

On May 17, 2005, UPC filed this action seeking temporary and permanent injunctive relief and damages against Cederstrom [*6] and Alcoa for (1) breach of contract, (2) tortious interference with contract; (3) violations of the Minnesota Trade Secrets Act; (4) common-law misappropriation of trade secrets; and (5) breach of common-law duties of confidentiality. In addition, UPC moved the district court under Minn. R. Civ. P. 65.01 and 65.02 for a temporary restraining order and temporary injunction enjoining Cederstrom and Alcoa from continuing to violate the non-competition, non-solicitation, and confidentiality provisions of Cederstrom's employment agreement with UPC.

The district court denied UPC's motion for a temporary injunction on August 16, 2005. The district court found that Cederstrom was in violation of the explicit terms of the non-compete provision of his employment agreement, but concluded that the restrictions in the agreement were broader than necessary to protect UPC's legitimate business interests. In addition, the district court found no evidence supporting the notion that Cederstrom either has disclosed, or intends to disclose, UPC confidential information. This appeal follows.

## DECISION

The district court may grant a temporary injunction if affidavits, deposition testimony, or oral [*7] testimony demonstrates sufficient grounds. Minn. R. Civ. P. 65.02(b). The decision to deny a temporary injunction is within the district court's discretion and will be reversed only if the district court clearly abused its discretion. *Cherne Indus., Inc. v. Grounds & Assocs., Inc.*, 278 N.W.2d 81, 91 (Minn. 1979). A district court's findings will not be set aside unless clearly erroneous. *LaValle v. Kulkay*, 277 N.W.2d 400, 402 (Minn. 1979). On review, this court considers the facts in the light most favorable to the prevailing party. *Bud Johnson Constr. Co. v. Metro. Transit Comm'n*, 272 N.W.2d 31, 33 (Minn. 1978).

A temporary injunction is an extraordinary equitable remedy intended to preserve the status quo pending adjudication on the merits. *Miller v. Foley*, 317 N.W.2d 710, 712 (Minn. 1982). In evaluating whether the district court abused its discretion, this court considers five factors: (1) the nature and background of the relationship between the parties preexisting the dispute giving rise to the request for relief; (2) the harm to be suffered by the moving party if the temporary restraint is denied as compared [*8] to that inflicted on the enjoined party if the injunction issues pending trial; (3) the likelihood that one party or the other will prevail on the merits when the fact

Case 1:07-cv-07837-AKH    Document 10-12    Filed 10/09/2007    Page 3 of 4

Page 3
2006 Minn. App. Unpub. LEXIS 594, *

situation is viewed in the light of established precedents fixing the limits of equitable relief; (4) the aspects of the fact situation, if any, which permit or require consideration of public policy; (5) the administrative burdens involved in judicial supervision and enforcement. *Dahlberg Bros., Inc. v. Ford Motor Co., 272 Minn. 264, 274-75, 137 N.W.2d 314, 321-22 (1965).*

I

UPC first argues that the district court committed reversible error in failing to enjoin Cederstrom and Alcoa from violating the non-compete agreement. The district court determined that Cederstrom breached the non-compete provision of that agreement as written by taking the position with Alcoa, but concluded that the agreement was likely unenforceable. We agree.

Minnesota courts look disfavorably upon restrictive covenants not to compete because they decrease competition in the market and restrict an employee's right to work. *See Bennett v. Storz Broad. Co., 270 Minn. 525, 533, 134 N.W.2d 892, 898 (1965).* [*9] This court will uphold a restrictive covenant, however, when the covenant is "for a just and honest purpose, for the protection of a legitimate interest of the party in whose favor it is imposed, reasonable as between the parties, and not injurious to the public." *Id.* The test applied in examining restrictive covenants is whether the restriction imposed on the employee is greater than reasonably necessary to protect the employer's business, considering the nature of the employment, the temporal restriction imposed, and the geographic scope of the restriction. *Id.* at 899.

The non-compete agreement here prohibited Cederstrom's employment with a competitor for 18 months following his resignation. In determining the reasonableness of a temporal restriction, this court examines the nature of Cederstrom's work, the time necessary for UPC to train a new employee, and the time necessary for UPC's customers to adjust to the new employee. *See Overholt Crop Ins. Serv. Co. v. Bredeson, 437 N.W.2d 698, 703 (Minn. App. 1989)* (upholding restrictive covenant as reasonable in scope). Cederstrom worked for UPC as an outside salesperson in UPC's Rochester branch. UPC produced [*10] no evidence indicating how many outside salespersons it employs or what percentage Cederstrom's customers contributed to UPC's total annual sales. There is no evidence that UPC invested significant time in training Cederstrom, and no evidence that the nature of Cederstrom's work selling siding requires a close contact with customers sufficient to create goodwill. *See Eutectic Welding Alloys Corp. v. West, 281 Minn. 13, 19, 160 N.W.2d 566, 570 (1968)* (finding a two-year restriction unreasonable when the employee sold welding supplies and had limited technical experience).

With respect to the geographic limitation, "[c]ourts generally uphold geographic limitations when they are limited to areas necessary to protect the employer's interest." *Overholt, 437 N.W.2d at 703* (upholding as reasonable a non-compete agreement limited to areas in which the employee actually worked). Here, the agreement prohibits Cederstrom from working for any UPC competitor that sells siding in Cederstrom's former territory, even if Cederstrom is not active in his former territory.

Construing the facts in respondents' favor, the district court did not abuse its discretion [*11] in refusing to enjoin Cederstrom from violating the non-compete agreement.

II

UPC next argues that the district court committed reversible error by failing to enjoin Cederstrom and Alcoa from violating the non-solicitation and confidentiality provisions of the employment agreement.

The party seeking the injunction must establish that the injunction is necessary to prevent irreparable harm and that there is no adequate legal remedy. *Cherne Indus., Inc., 278 N.W.2d at 92.* The party opposing the injunction must only show substantial harm to bar it. *Yager v. Thompson, 352 N.W.2d 71, 75 (Minn. App. 1984).* "An injunction will not issue to prevent an imagined injury which there is no reasonable ground to fear. The threatened injury must be real and substantial." *Hollenkamp v. Peters, 358 N.W.2d 108, 111 (Minn. App. 1984)* (quoting *AMF Pinspotters, Inc. v. Harkins Bowling, Inc., 260 Minn. 499, 504, 110 N.W.2d 348, 351 (1961)).* Here, UPC put forth no evidence that Cederstrom took confidential documents with him when he resigned; that Cederstrom contacted former UPC customers; or that Alcoa used UPC confidential information [*12] in structuring a deal with a customer. Finding no actual breach of the non-solicitation and confidentiality provisions, and because Alcoa specifically structured the terms of Cederstrom's employment to avoid violating the non-compete and non-solicitation provisions, the district court concluded that UPC's perceived threat of violation was insufficient to grant injunctive relief.

The district court did not abuse its discretion by refusing to enjoin respondents. There is no Minnesota authority presuming irreparable harm solely because a non-technical employee with access to confidential information took a position with a competitor. *Cf. Overholt, 437 N.W.2d at 701* (upholding inference of irreparable harm when an insurance salesman subject to a non-compete agreement admitted that he solicited his former employer's customers in violation of that agreement). Further, there is no presumption of irreparable harm resulting from Cederstrom's breach of the non-compete

Case 1:07-cv-07837-AKH   Document 10-12   Filed 10/09/2007   Page 4 of 4

Page 4
2006 Minn. App. Unpub. LEXIS 594, *

agreement because UPC put forth no evidence suggesting that Cederstrom had personal contact with his former customers sufficient to affect UPC's goodwill. *See Webb Publ'g. Co. v. Fosshage, 426 N.W.2d 445, 448 (Minn. App. 1988)* [*13] (noting that "[i]rreparable injury can be inferred from the breach of a restrictive covenant if the former employee came into contact with the employer's customers in a way which obtains a personal hold on the good will of the business"). Finally, Cederstrom was not a technical or creative employee whose employment with a competitor would likely lead to disclosure. *See Minn. Mining & Mfg. Co. v. Kirkevold, 87 F.R.D. 324, 333 (D. Minn. 1980)* (noting that "a former technical or 'creative' employee working for a competitor . . . can hardly prevent his knowledge of his former employer's confidential methods or data from showing up in his work" (quotation omitted)).

Because Cederstrom likely retains some information that gives him insight into UPC customer preferences, UPC's argument does have merit. But Minnesota courts do not grant injunctive relief solely because a former employer presumes that disclosure and solicitation are inevitable.

## III

Appellant next argues that the district court abused its discretion by refusing to enjoin Cederstrom and Alcoa from violating the Uniform Trade Secrets Act (UTSA) and their common-law duties of confidentiality.

The [*14] UTSA, *Minn. Stat. §§ 325C.01-.08* (2004), articulates and clarifies much of the common law concerning trade secrets and confidential information, allowing the protection of certain types of information through an action for misappropriation. *Electro-Craft Corp. v. Controlled Motion, Inc., 332 N.W.2d 890, 897-98 (Minn. 1983)*. Minnesota courts require the party seeking protection to show both the existence of and the misappropriation of the trade secret. *Id. at 897*. To qualify as a trade secret under the Act, information (1) must not be generally known or readily ascertainable; (2) must derive independent economic value from secrecy; and (3) must be the subject of reasonable efforts to maintain its secrecy. *Minn. Stat. § 325C.01, subd. 5*. "Actual or threatened misappropriation may be enjoined." *Minn. Stat. § 325C.02(a)*. But the moving party must demonstrate "a high degree of probability of inevitable disclosure." *Lexis-Nexis v. Beer, 41 F. Supp. 2d 950, 958 (D. Minn. 1999)* (quotations omitted).

The UPC affiants aver that Cederstrom had access to UPC trade [*15] secrets including: (1) customer lists, credit histories, and buying habits; (2) UPC pricing information, rebate programs, mark-ups, and margins; and (3) UPC long-term sales strategies. We are not convinced that the general categories of information articulated by UPC are sufficiently detailed to permit characterization as a trade secret. *See In re Rahr Malting Co., 632 N.W.2d 572, 576 (Minn. 2001)* (affirming the district court's refusal to close a trial and seal records containing a malting plant's sales data, expenses, costs, credits, and customer information because the plant failed to explain how the information satisfied the trade-secret criteria) (citing *Int'l Bus. Mach. Corp. v. Seagate Tech., Inc., 941 F. Supp. 98, 101 (D. Minn. 1992))*. Accordingly, we affirm the district court's refusal to enjoin Cederstrom and Alcoa from disclosing this information.

Even if UPC had provided sufficient detail to characterize the information as trade secrets, UPC has not demonstrated the requisite high probability of inevitable disclosure. To warrant an injunction, the moving party must demonstrate something more than a risk of irreparable harm. *Int'l Bus. Mach. Corp., 941 F. Supp. at 101*. [*16] The moving party may not use an injunction "simply to eliminate a possibility of a remote future injury, or a future invasion of rights," and "injunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties." *Id.* (denying injunctive relief when the moving party failed to prove that the employee had disclosed confidential information in the six months after termination of employment). UPC produced no evidence demonstrating that Cederstrom removed UPC confidential information or that Cederstrom has disclosed UPC confidential information. Accordingly, the district court did not abuse its discretion in denying injunctive relief.

**Affirmed.**