ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

DANIEL EISNER,

                  Plaintiff,                      07 Civ. 7837

       v.

                                            **AFFIDAVIT OF**
                                            **TOMISLAV**
WALLEYE TRADING ADVISORS, LLC,     **PAVLICIC**

                  Defendant.

------------------------------------------------------------------- x

STATE OF NEW YORK    )
                                 ) ss.:
COUNTY OF NEW YORK  )

       TOMISLAV PAVLICIC, being duly sworn, deposes and says:

       1.     I am employed by D. E. Shaw & Co., L.P. ("D. E. Shaw" or "the Company") as a recruiter in the Strategic Growth department. I have held this position since July 19, 2004. I make this affidavit in support of Daniel Eisner's ("Eisner") motion for a preliminary injunction enjoining Walleye Trading Advisors, LLC ("Walleye") from engaging in conduct, including seeking to enforce a non-competition agreement (the "Non-Compete") against Eisner, designed to prevent him from commencing employment with D. E. Shaw. This affidavit is based upon my personal knowledge.

       2.     D. E. Shaw is a leading investment and information technology firm with its main office in New York, New York. D. E. Shaw employs a number of technology professionals to undertake various tasks at the Company. Like many financial services companies involved in quantitative trading, D. E. Shaw separates the functions of these employees. Technology

professionals working in the "Front Office" are the quantitative analysts ("Quants"), who are engaged in the development of proprietary trading algorithms and/or trading programs, and Software Developers, who write the code that tells the computer systems how to effectuate the algorithms created by the Quants. In contrast, technology professionals in the "Systems" department (also know as "IT" professionals) are responsible for the implementation and maintenance of computer systems infrastructure.

3. In my position at D. E. Shaw, I am actively involved in recruiting technology professionals to work in both the Front Office and in the Systems department. In this capacity, I review resumes of candidates submitted directly by candidates and by headhunters to pre-screen and identify candidates who may be appropriate for positions at the Company. In my position, I review over six thousand resumes of IT professionals each year to ascertain if they appear to have the skills that would be necessary for IT positions within D. E. Shaw.

4. On June 6, 2005, an outside headhunter, Mike Ellis of Gambit Technologies Inc., forwarded the resume of Eisner for consideration for a Systems Administrator position at the Company. Based upon my review of his resume, I ascertained that Eisner's work at Securities Industry Automation Corporation made him a strong candidate for a Systems Administrator role at the Company. Accordingly, on June 16, 2005, I forwarded Eisner's resume to Systems hiring managers, including Peter Reiss, the individual in charge of the Company's Systems department at that time. Shortly thereafter, the hiring managers contacted me to ask me to set up an interview of Eisner by an employee of the Systems department at the Company. Thereafter, my department contacted Mike Ellis to try to arrange for an interview of Eisner. Before such interview could be arranged, on June 29, 2005, Mike informed us that Eisner was no longer available.

6. In 2007, Mike Ellis again submitted Eisner's resume for consideration for a Systems Administrator position at the Company. Again, I reviewed his resume and determined that he appeared to have experience that would provide the skills desired of an IT professional in the Company's Systems department. Accordingly, I again forwarded his resume to hiring managers, who again expressed an interest in Eisner as a candidate for a role in the Systems department. Thereafter, various Systems department employees interviewed Eisner and an offer of employment was made to him for a Systems Administrator role.

7. In both 2005 and 2007, I ascertained that Eisner's resume listed Systems experience that would be relevant to Systems positions at D. E. Shaw. My interest in Eisner was driven by the skill set that I expected that he had developed in Systems administration in the financial services industry. Throughout this process, I never had any interest in obtaining confidential information that Eisner may have learned at his prior jobs. In fact, as a matter of Company policy, we require all employees to sign agreements promising not to use or disclose confidential information learned at a prior engagement. Given that D. E. Shaw wanted to interview Eisner prior to his employment at Walleye, it defies logic to assert that the Company made an offer to hire Eisner to obtain access to confidential information that he acquired in his position at Walleye.

8. As recruiter of IT professionals, I generally would decide not to interview an IT professional who had not worked in the industry for two years. In order to consider such a candidate, I would need to see an indication that the individual was willing to accept a more junior role than the last one held, with the lower compensation that would be associated with a more junior role. My concern about such a candidate is driven by the fact that technology and industry practices change rapidly, such that an IT professional can fall quickly behind if he or

she is not actively working in the field. Accordingly, if Eisner is prevented from working as a Systems professional in the financial industry for two years, his career will be significantly impacted.

_____
TOMISLAV PAVLICIC

Sworn to before me this
9th day of October, 2007

_____
Notary Public    Matthew J. Neel
                 Notary Public # 02NE6078781
                 Commission Expires 1/24/2011

NYK 1124402-3.042771.0039